Donald J. Kula, Bar No. 144342
DKula@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: +1.310.788.9900
Facsimile: +1.310.788.3399

Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Mikella M. Hurley, *pro hac vice pending*
MHurley@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W. Suite 800
Washington, DC 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

Attorneys for Defendant
GERBER PRODUCTS COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIANCA VELASCO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GERBER PRODUCTS COMPANY, *et al.*,<br><br>Defendants. | Case No. 2:24-cv-07758-SPG-PVC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Date: January 8, 2025<br>Time: 1:30 p.m.<br>Ctrm: 5C<br>Judge: Hon. Sherilyn Peace Garnett |

**TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 8, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5C, before the Honorable Sherilyn Peace Garnett of the above-entitled Court located at the First Street Courthouse, 350 West First Street, Los Angeles, CA 90012, Defendant Gerber Products Co. ("Gerber" or "Defendant"), by and through its attorneys of record, will and hereby do move for an order dismissing Plaintiff Vianca Velasco's ("Plaintiff" or "Ms. Velasco") claims in the Class Action Complaint ("Complaint") (ECF No. 1) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place by videoconference on November 18, 2024. Gerber's motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file in this action, and such other evidence and argument as may be presented to the Court at or before the hearing on the motion.

DATED: November 25, 2024

**PERKINS COIE LLP**

By: /s/ *Donald J. Kula*

Donald J. Kula, Bar No. 144342
DKula@perkinscoie.com
Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Mikella M. Hurley, *pro hac vice pending*
MHurley@perkinscoie.com

Attorneys for Defendant
GERBER PRODUCT COMPANY

## TABLE OF CONTENTS


Page

**MEMORANDUM OF POINTS AND AUTHORITIES** ..... 1

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. The Cal PRTT Act ..... 2

B. CalPRTT Act Litigation ..... 5

C. Plaintiff's Complaint ..... 6

III. LEGAL STANDARDS ..... 7

IV. ARGUMENT ..... 8

A. Plaintiff lacks Article III standing because she does not allege visiting the website, and she did not suffer a concrete injury ..... 8

1. Plaintiff does not allege a particularized injury ..... 9

2. Plaintiff does not allege a traditionally recognized injury. ..... 9

B. The Complaint fails to demonstrate personal jurisdiction. ..... 11

C. The Complaint fails to state a claim. ..... 13

1. The Act is not applicable to commercial websites like Gerber's ..... 14

2. Plaintiff's theory is contrary to the rule of lenity. ..... 17

3. The Complaint fails to allege a trap-and-trace claim. ..... 20

i. The Complaint does not allege any communications. ..... 20

ii. The pixel does not capture "dialing, routing, addressing, or signaling" ("DRAS") information ..... 20

4. Plaintiff has not alleged injury as required by CIPA ..... 22

5. The Act expressly authorizes Gerber to collect visitor information. ..... 22

V. CONCLUSION ..... 24

## TABLE OF AUTHORITIES

Page

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8, 21

*Augustine v. Great Wolf Resorts, Inc.*,
No. 23-cv-00281, 2024 WL 3450967 (S.D. Cal. July 18, 2024) ........ 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*Blaker v. The Am. Bicycle Grp., LLC*,
No. 24-cv-09429 (C.D. Cal. Oct. 31, 2024) ........ 5

*Bostick v. Gen. Motors, LLC*,
No. 19-CV-02451, 2020 WL 13283478 (C.D. Cal. July 22, 2020) ........ 6

*Byars v. Sterling Jewelers, Inc.*,
No. 22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 9, 10, 11

*Casillas v. Cypress Ins. Co.*,
770 F. App'x 329 (9th Cir. 2019) ........ 16

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ........ 7

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) ........ 10

*Cook v. GameStop, Inc.*,
689 F.Supp.3d 58 (W.D. Pa. 2023) ........ 9

*Crowley v. Cybersource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ........ 16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 11

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ........ 11

## TABLE OF AUTHORITIES
## (continued)

Page

*Dyer v. Nw. Airlines Corps.*,
334 F. Supp. 2d 1196 (D.N.D. 2004) ........ 16

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ........ 11

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........ 15

*Greenley v. Kochava.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 5, 23

*Heiting v. Marriott Int'l, Inc.*,
No. 23-cv-10822, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024) ........ 11, 13

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 15

*Heiting v. Williams-Sonoma, Inc.*,
No. 24-cv-08098 (C.D. Cal. Sept. 20, 2024) ........ 5

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 10

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 10

*In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45, 47 (D. Mass. 2005) ........ 16

*In re Certified Question of L.*,
858 F.3d 591 (Foreign Int. Surv. Ct. Rev. 2016) ........ 21

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 19

*In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns*,
349 F.3d 1132 (9th Cir. 2003) ........ 16, 18

## TABLE OF AUTHORITIES (continued)

Page

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 11

*In the Matter of Rules & Pol'ys Regarding Calling No. Identification Serv.- Caller ID*, 9 F.C.C. Rcd. 1764 (1994) (Ex. D, U.S. Dep't of Justice Memorandum, Oct. 28, 1993) .......... 23

*Jurdi v. Nike, Inc.*, No. 24-cv-08093 (C.D. Cal. Sept. 20, 2024) .......... 5

*Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914 (Cal. 2006) .......... 24

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) .......... 6

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) .......... 17

*Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 10

*Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954 (C.D. Cal. 2023) .......... 1, 12

*Lightoller v. Jetblue Airways Corp.*, No. 23-cv-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 9, 10, 11

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 16

*Martin v. Outdoor Network LLC*, No. 23-cv-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) .......... 12

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014) .......... 11

*Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662 (9th Cir. 2018) .......... 13

## TABLE OF AUTHORITIES
## (continued)

Page

*Meisler v. Chrzanowski*,
No. 12-cv-00487, 2013 WL 5375524 (D. Nev. Sept. 24, 2013).........................21

*MGA Ent., Inc. v. Cabo Concepts Ltd.*,
No. CV 20-10170, 2021 WL 4733784 (C.D. Cal. June 7, 2021)........................13

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ..................................................................9

*Moody v. C2 Educ. Sys. Inc.*,
No. 24-cv-04249, 2024 WL 3561367 (C.D. Cal. July 25, 2024)........................23

*N. Alaska Salmon Co. v. Pillsbury*,
162 P. 93 (Cal. 1916).........................................................................................13

*Ohio Domestic Violence Network v. Pub. Utilities Comm'n*,
638 N.E.2d 1012 (Ohio 1994) .....................................................................22, 23

*Pakootas v. Teck Cominco Metals, Ltd.*,
905 F.3d 565 (9th Cir. 2018)..............................................................................12

*People v. Sephora, USA*,
No. CGC-22-601380 (Cal. Super. Aug. 23, 2022)...............................................19

*Price v. Converse, Inc.*,
No. 24-cv-08091 (C.D. Cal. Sept. 20, 2024).........................................................5

*Ranza v. Nike*,
793 F.3d 1059 (9th Cir. 2015)............................................................................12

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004).........................................................................7, 12

*Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013)..............................................................................8

*Southern Bell Tel. & Tel. Co. v. Hamm*,
409 S.E.2d 775 (S.C. 1991)................................................................................22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .........................................................................................7, 8

## TABLE OF AUTHORITIES
## (continued)

Page

*Sullivan v. Oracle Corp.*,
254 P.3d 237 (Cal. 2011) .......... 13

*Taus v. Loftus*,
40 Cal. 4th 683 (2007) .......... 10

*TransUnion v. Ramirez*,
594 U.S. 413 (2021) .......... 8, 9

*United States v. Gonzalez, Inc.*,
412 F.3d 1102 (9th Cir. 2005) .......... 3

*United States v. Lanier*,
520 U.S. 259 (1997) .......... 17, 18

*United States v. N.Y. Tel. Co.*,
434 U.S. 159 (1977) .......... 3

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .......... 17, 19

*Vita v. New Eng. Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) .......... 15

*Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis*,
555 N.W.2d 179 (Wis. Ct. App. 1996) .......... 17, 18, 22, 23

**STATUTES**

18 U.S.C. § 3121,
Pen Register Trap and Trace Act (PRTT Act) .......... 3, 4, 23

18 U.S.C. § 3122 .......... 3

18 U.S.C. § 3123 .......... 3, 4

18 U.S.C. § 3123(a)(1) .......... 4

18 U.S.C. § 3123(b)(1)(A) .......... 23

18 U.S.C. § 3123(b)(1)(C) .......... 23

## TABLE OF AUTHORITIES
## (continued)


Page

18 U.S.C. § 3123(d)(2) .......... 23

18 U.S.C. § 3124 .......... 3

18 U.S.C. § 3124(b) .......... 23

18 U.S.C. § 3125 .......... 3

Cal. Civ. Code § 1798.100,
California's Consumer Privacy Act (CCPA) .......... 18, 19, 20

Cal. Civ. Code § 1798.120 .......... 18

Cal. Civ. Code § 1798.121 .......... 19

Cal. Civ. Code § 1798.135 .......... 18

Cal. Civ. Code § 1798.140(v)(1) .......... 18

Cal. Penal Code § 148.5 .......... 7

Cal. Penal Code § 637.2 .......... 3

Cal. Penal Code § 637.2(a) .......... 22

Cal. Penal Code § 638.50(c) .......... 3, 14, 20, 21

Cal. Penal Code § 638.51,
California Pen Register Trap and Trace Act (CalPRTT Act) .......... passim

Cal. Penal Code § 638.51(a) .......... 2, 13

Cal. Penal Code § 638.51(b) .......... 2

Cal. Penal Code § 638.51(b)(1) .......... 15, 17

Cal. Penal Code § 638.51(b)(2) .......... 15, 17

Cal. Penal Code § 638.51(b)(3) .......... 15, 17

Cal. Penal Code § 638.51(b)(4) .......... 15

Cal. Penal Code § 638.51(b)(5) .......... 15, 22, 24

## TABLE OF AUTHORITIES (continued)

Page

Cal. Penal Code § 638.52 .......... 13

Cal. Penal Code § 638.52(1) .......... 14

Cal. Penal Code § 638.52(3) .......... 14

Cal. Penal Code § 638.52(5)(g) .......... 14

Cal. Penal Code § 638.52(b) .......... 4

Cal. Penal Code § 638.53 .......... 13

Cal. Penal Code § 1546(e) .......... 16

California Invasion of Privacy Act (CIPA) .......... passim

**RULES**

Cal. L.R. 7-3 .......... 2

Fed. R. Civ. P. 12(b)(1) .......... 7

Fed. R. Civ. P. 12(b)(2) .......... 2, 7, 8

Fed. R. Civ. P. 12(b)(6) .......... 2, 8, 13

**REGULATIONS**

*In re U.S. for an Ord. Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 210 (D.D.C. 2018) .......... 16

J. Garnett Standing Ords. for Newly Assigned Civ. Cases, Ord. G(1) .......... 2

Op. of B. Lockyer, Att'y Gen., 86 Cal. Op. Att'y Gen. 198 at 2 (2003) .......... 3

**OTHER AUTHORITIES**

147 Cong. Rec. S10990-02 (daily ed. Oct. 12, 1999 (statement of Sen. Leahy), 2001 WL 1297566 .......... 4

86 Cal. Op. Att'y Gen. 198 .......... 3

A.B. 929, 2015-2016 Reg. Sess. (Cal. 2015) .......... 3

## TABLE OF AUTHORITIES
## (continued)


**Page**

Assemb. Comm. on Pub. Safety, Analysis of Assemb. Bill No. 929 (CA 2015-2016 Reg. Sess.) at 10-11 ........ 4

S. REP. NO. 99-541 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 3555, 3564 ........ 4

U.S. Constitution ........ 11

U.S. Constitution, art. III ........ 7, 8, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Plaintiff, on behalf of a putative class of visitors to Gerber's website (the "Website"), alleges that Gerber, a baby and toddler-food company, violated the law because, like countless other American companies, it used the TikTok analytics pixel (the "Pixel") on its Website. Plaintiff maintains that this virtually ubiquitous digital-engagement tool is actually a trap-and-trace device—a decades-old investigative tool that law enforcement uses to map the relationships between suspects and co-conspirators based on their calling patterns. Even more outrageously, Plaintiff alleges that Gerber deployed the Pixel to spy on Americans at the behest of a foreign power.

The Complaint, which is rife with implausible, conspiratorial accusations, is just one among a deluge of virtually identical lawsuits currently flooding the courts. *See Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 964 (C.D. Cal. 2023) (describing this phenomenon). Like the many others filed in recent months, this Complaint distorts the California Pen Register Trap and Trace Act, Cal. Penal Code § 638.51 *et seq.* ("CalPRTT Act" or the "Act") in an attempt to secure generous statutory damages, with little regard to the law, the facts, or the collateral damage to Gerber's reputation. Crucially, Plaintiff ignores statutory language and legislative history limiting the Act to technologies that enable person-to-person communications. The Complaint's thin allegations also omit basic pleading requirements that are necessary to Plaintiff's claim. For example, Plaintiff does not make a single allegation about her supposed interactions with the Website. This suit has reached the point when "all reasonable people should agree" things have "gone too far," *Caraway Home Inc.*, 655 F. Supp. 3d at 964, and respectfully requests that the Court dismiss the Complaint with prejudice, for several, independently sufficient reasons.

***First***, the Complaint should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(1) because, absent any allegations about Plaintiff's

experience with the Website, it fails to establish Plaintiff's standing to sue in federal court.

***Second***, the Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. Plaintiff does not make a prima facie case of why Gerber is subject to the jurisdiction of California courts merely for using the Pixel on its Website.

***Third***, the Complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim. To start, the CalPRTT Act applies only to person-to-person communications like phone and email, and not to commercial websites like Gerber's. And even if ambiguous language in the Act might conceivably extend to commercial websites, applying the Act in this way would be contrary to the rule of lenity. Further, if the CalPRTT Act actually applied here, the Complaint would still fall short because it does not allege two necessary elements of a trap-and-trace device, makes no attempt to allege injury as required to seek civil damages, and ignores a statutory exemption that authorizes Gerber's use of the Pixel.[1]

## II. BACKGROUND

### A. The Cal PRTT Act

This claim arises out of the CalPRTT Act, California's version of a decades-old federal criminal statute developed to govern "pen registers" and "trap and trace" devices (together, "PRTTs"). The Act contains a single, criminal prohibition identical to that in the federal Act, which makes it unlawful to "install or use" either a "pen register" or a "trap and trace device" without either a court order or one of the Act's enumerated exemptions for service providers. Cal. Penal Code § 638.51(a)-(b). Just

[1] Consistent with the Local Rules and this Court's standing orders, Gerber, through its counsel, met and conferred with Plaintiff's counsel prior to filing this motion and fully described each ground for dismissal. *See* L.R. 7-3; J. Garnett Standing Ords. for Newly Assigned Civ. Cases, Ord. G(1); *see also* Declaration of N. Menaldo ("Menaldo Decl."), ¶ 2. Gerber also provided Plaintiff's counsel with public and readily available evidence that the Website was not capturing or transmitting the types of personal identifiers, like name, address, or email, as alleged in the Complaint. *See* Menaldo Decl. ¶ 3.

like the federal Act, the CalPRTT Act defines a "trap and trace device" as:

> [A] device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

*Id.* § 638.50(c). Although it is primarily concerned with law enforcement's use of PRTTs, the CalPRTT Act forms a part of the larger California Invasion of Privacy Act ("CIPA"), which authorizes those who have been "injured" to sue and obtain either statutory or actual damages. *Id.* § 637.2.

Law enforcement have used PRTTs for decades to reveal "identities and relationship[s] between individuals suspected of engaging in criminal activity." Op. of B. Lockyer, Att'y Gen., 86 Cal. Op. Att'y Gen. 198 at 2 (2003). They first emerged in the telephonic era—a "pen register" was a "device that records the [outgoing] numbers dialed on a telephone," but "does not overhear oral communications." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 161 n. 1 (1977). Trap-and-trace devices, by contrast, "record[] the incoming calls." *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005). Because PRTTs reveal who is communicating with whom, they are valuable criminal investigative tools, "especially in conspiracies." 86 Cal. Op. Att'y Gen. 198 at 2.

The first PRTT statute— the federal PRTT Act, 18 U.S.C. § 3121 *et seq.*— was enacted in 1986 and established a baseline prohibition on capturing calling information (subject to certain, limited exemptions), while providing law enforcement a mechanism to obtain PRTTs. *See id.* §§ 3121-3125. However, California law enforcement could not obtain PRTTs until 2015, when the Legislature enacted the CalPRTT Act. *See* A.B. 929, 2015–2016 Reg. Sess. (Cal. 2015). In doing so, it adopted the structure, text, and definitions of the federal Act with few substantive changes. Notably, the text of the CalPRTT Act's prohibitions and corresponding exemptions are virtually identical to those in the federal Act. *Compare*

18 U.S.C. § 3123 *with* Cal. Penal Code § 638.51.[2]

Both the federal PRTT Act and CalPRTT Act have the same scope; they were enacted with person-to-person forms of communications—particularly telephonic communications—in mind. For instance, when Congress enacted the federal Act, it understood PRTTs almost exclusively in the context of phone calls. *See, e.g.*, S. REP. NO. 99-541, at 10 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 3555, 3564 (PRTTs either "record the telephone numbers to which calls have been placed from a particular telephone," or that "record the numbers of telephones from which calls have been placed to a particular telephone"). And when Congress expanded the federal Act in 2001 to account for emerging technologies like cellular networks and email, it still viewed the Act's scope as limited to person-to-person forms of communication. *See* 147 Cong. Rec. S10990-02, S10999-1000 (daily ed. Oct. 12, 1999 (statement of Sen. Leahy), 2001 WL 1297566 (the "rapid computerization of the telephone system has changed the tracing process," and functions "normally accomplished by physical hardware components attached to *telephone lines*" were now "typically performed by computerized collection and retention of *call routing information* passing through *a communications system*") (emphases added).

The California Legislature likewise viewed the CalPRTT Act as limited to person-to-person communications. A 2015 bill analysis states that PRTTs "generally track incoming and outgoing telephone calls," and show "which people" are "communicating with one another and at what times." Assemb. Comm. on Pub. Safety, Analysis of Assemb. Bill No. 929 (CA 2015–2016 Reg. Sess.) at 10–11. In other words, PRTTs have always been understood to capture information about who

---

[2] The major difference between the two is that the CalPRTT Act contains a heightened showing and more stringent requirements for PRTT orders. *Compare* 18 U.S.C. § 3123(a)(1) (government must certify that information likely to be obtained "is relevant to an ongoing criminal investigation") *with* Cal. Penal Code § 638.52(b) (court must find the information "is relevant to an ongoing investigation and that there is probable cause to believe" the PRTT will lead to certain outcomes).

is communicating with whom, and when and how those communications occur. Conversely, just because a tool might identify someone does not make it a PRTT.

**B. CalPRTT Act Litigation**

For decades, PRTT-related disputes were almost exclusively the domain of law enforcement and communication-service providers like phone companies. Websites have been capturing information about visitors, including IP addresses and identifiers those visitors volunteer, for as long as the Internet has existed. This is how the modern Internet works—and there is no evidence to suggest that either regulators or litigants previously believed commercial websites fell within the scope of either the CalPRTT Act or the federal Act. Until last summer, it was unheard of for a commercial website to be accused of using an unlawful PRTT simply for collecting visitor data. This changed following a district court decision in *Greenley v. Kochava*. *See* 684 F. Supp. 3d 1024 (S.D. Cal. 2023). There, the plaintiff sued a third-party data broker that collected a wealth of information generated by peoples' mobile phones through software installed in mobile applications. *See id.* The plaintiff overcame a motion to dismiss based on the novel theory that this third-party software was an unlawful "pen register" under the CalPRTT Act. *See id.* Even though *Kochava* involved entirely different facts—namely, a suit against a third-party that installed tracking software on people's *phones*—it prompted a wave of cookie-cutter suits against practically any company using commonplace analytics technologies on their *own websites*.

In the past three months, Plaintiff's counsel, Tauler Smith LLP, has filed over a dozen functionally identical suits in the Central District alone, alleging trap-and-trace violations based on the same technology at issue here. *See, e.g.*, *Price v. Converse, Inc.*, No. 24-cv-08091 (C.D. Cal. Sept. 20, 2024); *Jurdi v. Nike, Inc.*, No. 24-cv-08093 (C.D. Cal. Sept. 20, 2024); *Heiting v. Williams-Sonoma, Inc.*, No. 24-cv-08098 (C.D. Cal. Sept. 20, 2024); *Blaker v. The Am. Bicycle Grp., LLC*, No. 24-cv-09429 (C.D. Cal. Oct. 31, 2024). The number in California Superior Court

is likely far higher. The majority will reach settlement before a decision on a motion to dismiss.

**C. Plaintiff's Complaint**

Plaintiff is a citizen of California, residing in the Central District. Compl. ¶ 4. Gerber, a retailer that sells baby and toddler food, operates www.gerber.com to market its products. *Id.* ¶ 8. Gerber is incorporated in Michigan, *id.* ¶ 5, and although not mentioned in the Complaint, Gerber maintains its principal place of business in Virginia. *See* Menaldo Decl.¶ 5.[3]

Plaintiff alleges that Gerber installed the Pixel on the Website, and the Pixel sends information to TikTok about which pages Website visitors visit and what they click on. Compl. ¶ 14. Plaintiff alleges that the Pixel identifies "otherwise anonymous" using information they volunteer while on the Website—e.g., names, email addresses, and phone numbers they use to create accounts. *See id*. ¶¶ 9, 12, 31. The Complaint claims that the Pixel transmits "medical information related to minors," *id.* ¶ 15, but neither describes what medical information might be at issue, nor states that Plaintiff shared such information while on the Website.

Plaintiff admits that Gerber displays a "cookie banner" to inform visitors that the Website uses analytics tools like the Pixel. *Id.* ¶ 11. But she claims that Gerber fails to obtain "express or implied consent" to use the Pixel, because "information has already been sent to TikTok" by the time a visitor sees the banner. *Id.*[4] Plaintiff

[3] The "court may consider[] declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction." *Bostick v. Gen. Motors, LLC*, No. 19-CV-02451, 2020 WL 13283478, at *2 (C.D. Cal. July 22, 2020) (citation and internal quotation marks omitted).

[4] The cookie banner, which is only faintly visible in a screenshot in the Complaint, states, "We use cookies and other technologies to improve our site, personalize your experience, monitor and record your engagement with us, and share limited personal information with third-party advertisers. Your use of this site signals your agreement. See Your Privacy Choices button in the footer below to opt out of these cookies and other tracking technologies." *See* Compl. at 3; Menaldo Decl. ¶ 3 (attaching screenshot); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (doctrine of "incorporation by reference," which "applies with equal force to internet pages as it does to printed material," allows courts to consider information about a website in the context in which it appears).

also accuses Gerber of not informing visitors "that the [W]ebsite is collaborating with the Chinese government." *Id.* ¶¶ 19, 17.[5]

Though the Complaint centers on the Website, Plaintiff never states that she ever visited it, that she provided any information to Gerber, or that she was affected in any way by the Pixel. Plaintiff seeks to certify a class composed (1) "[a]ll persons within California who within the statute of limitations period whose [sic] chats were transcribed by third parties,"[6] and (2) "[a]ll persons within California who within the statute of limitations period whose [sic] identifying information was sent to TikTok." *Id.* On behalf of herself and the putative class, Plaintiff brings a single claim for violation of the CalPRTT Act.

## III. LEGAL STANDARDS

**Rule 12(b)(1).** The Court must dismiss a complaint pursuant to Rule 12(b)(1) if the allegations are insufficient on their face to invoke federal jurisdiction. A district court lacks jurisdiction when plaintiff fails to establish standing to sue pursuant to Article III of Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff has the burden of establishing Article III standing to assert the claims. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

**Rule 12(b)(2).** "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court must dismiss claims against a non-resident defendant when the plaintiff fails to make a prima facie showing that the Court has personal jurisdiction over that defendant. *Id.*

---

[5] Plaintiff provides zero support for this wild claim (because she cannot). However, such an allegation, which borders on accusing Gerber of *espionage*, should not be made lightly. For example, if Plaintiff knowingly made such a claim to a California peace officer, doing so could constitute a crime under California law. *See* Cal. Penal Code § 148.5.

[6] This is likely a scrivener's error; there are no other allegations about chats.

**Rule 12(b)(6).** To survive a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. And a court should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted).

## IV. ARGUMENT

This Complaint suffers from multiple fundamental defects, each of which independently warrant dismissal.

### A. Plaintiff lacks Article III standing because she does not allege visiting the website, and she did not suffer a concrete injury.

To establish Article III jurisdiction, a plaintiff must allege an "injury in fact" that is (a) concrete and particularized, (b) actual and imminent, not conjectural or hypothetical, and (c) fairly traceable to the challenged action. *Spokeo, Inc.*, 578 U.S. at 338–39. The alleged injury must also have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion v. Ramirez*, 594 U.S. 413, 424 (2021) (internal quotation marks and citation omitted). A bare, technical violation of a statute is insufficient; the plaintiff must allege an actual injury traditionally recognized as a harm. *See id.* at 435–39. The Complaint fails to meet this standard and should be dismissed under Rule 12(b)(2) because it does not allege that Plaintiff ever visited the Website, let alone that she suffered a concrete injury.

**1. Plaintiff does not allege a particularized injury.**

Plaintiffs' general allegations about what might happen if *someone* were to visit the Website do not entitle *Plaintiff* to relief. As courts routinely hold in similar cases, Article III requires the plaintiff to plausibly allege that she, herself, has provided personal information to the defendant. *See, e.g.*, *Lightoller v. Jetblue Airways Corp.*, No. 23-cv-361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no injury in fact under CIPA without allegation that plaintiff "disclosed any personal information to Defendant"); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864–65 (S.D. Cal. 2023) (same); *Cook v. GameStop, Inc.*, 689 F.Supp.3d 58, 65–66 (W.D. Pa. 2023) (same).

Instead of describing Plaintiff's own interactions with the Website, the Complaint describes hypothetical "users" and "visitors," and relies on general screenshots of unknown origin. *See, e.g.*, Compl. ¶ 11–12 (the Pixel collects information when "a *user* lands on the website" so that "TikTok can isolate with certainty the *individual* to be targeted) (emphases added); *see also, e.g.*, *id.* ¶ 30 (the software captures "information of *website visitors*") (emphasis added). Because Plaintiff never claims that *she visited* the website, that *she was among the individuals* supposedly targeted, or that *her data* was captured, her Complaint should be dismissed. *Byars v. Sterling Jewelers, Inc.*, No. 22-cv-01456, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023) (no Article III standing to bring CIPA claim because Plaintiff did not allege disclosure of sensitive information).

**2. Plaintiff does not allege a traditionally recognized injury.**

Plaintiff also lacks standing because she makes no claim that Gerber's use of the Pixel could cause the type of harm required for Article III jurisdiction. *See TransUnion*, 594 U.S. at 424 (a "concrete harm" has "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts"). When assessing federal jurisdiction in cases alleging privacy harms, courts typically analyze whether a harm is analogous to traditional privacy torts, notably

(1) "disclosure of private information" or (2) "intrusion upon seclusion." *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (dismissal due to "an insufficient fit between the loss of information alleged" and "private disclosure of private facts and intrusion upon seclusion"). Disclosure of private information requires sensitive and intimate private facts, the disclosure of which "would be offensive and objectionable to the reasonable person." *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007). Intrusion upon seclusion requires an intrusion that is contrary to a person's reasonable expectation of privacy in a manner that would be "highly offensive" to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Plaintiff's claim contains virtually none of the elements of either tort.

First, Plaintiff makes no allegation that Gerber captured any sensitive or intimate private facts, as to Plaintiff or visitors generally. *See Loftus*, 40 Cal. 4th at 717. Instead, the Pixel allegedly captured anodyne personal identifiers that visitors would need to *voluntarily disclose* while on the Website, like their names and email addresses, along with a hodgepodge of other information that does not directly identify anyone, for example, "device and browser information," and "geographic information." Compl. ¶¶ 10, 12, 31.[7] This information is hardly sensitive or intimate, and courts hold that it does not "implicate[] a protectable privacy interest" when disclosed to a website. *Byars*, 2023 WL 2996686 at *2–3; *see also Lightoller*, 2023 WL 3963823, at *4 (no standing to allege CIPA claim because "mouse movements, clicks, keystrokes," text "entered into an information field," and URLs were not "private" information).

Second, Plaintiff never alleges that Website visitors have a reasonable

---

[7] The Court need not accept as true the unsupported allegation that "[a]s can be seen above, the information given to TikTok by Defendant includes medical information related to minors." Compl. ¶ 15. The Complaint shows nothing of the sort and contains no factual allegations plausibly suggesting that Gerber collects medical information on its (baby food) Website. *See Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (unsupported CIPA allegation was conclusory); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (similarly finding unsupported CIPA allegations conclusory).

expectation of privacy in any of this information because she cannot. *See, e.g.*, *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 945– 46 (S.D. Cal. 2024) (no expectation of privacy in "personal information and browser history" shared with website absent allegation of intimate or sensitive personally identifiable information); *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications.") (collecting cases). And since none of the information described in the Complaint is either private or sensitive, it follows that its collection or disclosure cannot be "highly offensive" to a reasonable person. *Lightoller*, 2023 WL 3963823, at *4; *Byars*, 2023 WL 2996686 at *2–3. Accordingly, even if Plaintiff alleged that the Pixel captured any of *her information* (she does not), she still could not allege a traditional injury-in-fact.

**B. The Complaint fails to demonstrate personal jurisdiction.**

To hail a foreign defendant like Gerber into court, a plaintiff must show either general or specific personal jurisdiction. *See, e.g.*, *Heiting v. Marriott Int'l, Inc.*, No. 23-cv-10822, 2024 WL 3751276, at *2 (C.D. Cal. Aug. 5, 2024) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001)). When sitting in diversity, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution" the Court should look to "the limits imposed by federal due process." *Id.* Plaintiff must make a prima facie showing that jurisdiction is proper at the motion to dismiss stage. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).

The Complaint makes no such showing. First, it does not allege systematic contacts in California and admits that Gerber is incorporated in Michigan. *See* Compl. ¶ 5; *see generally, id.* Gerber's principal place of business is in Virginia. *See* Menaldo

Decl. ¶ 5. Accordingly, the Court may not exercise general jurisdiction over Gerber. *See Ranza v. Nike*, 793 F.3d 1059, 1069 (9th Cir. 2015) (general jurisdiction is only available outside a corporation's place of incorporation or principal place of business in an "exceptional case").

The Complaint also fails to allege a prima facie case of specific jurisdiction, which exits only if: (1) the defendant purposefully directed its activities at forum state, (2) the claims "arise out of or relate to" the defendant's contacts with the forum; and (3) exercising jurisdiction comports with fair play and substantial justice. *See Schwarzenegger*, 374 F.3d at 802.

Plaintiff's case fails on the first prong. Her sole relevant allegation is that Gerber "purposefully directed its activities" at the Central District "by regularly tracking individuals in California through its website." Compl. ¶ 2. But conclusory allegations are insufficient. *See Caraway Home Inc.*, 655 F. Supp. 3d at 969–70 (no personal jurisdiction in CIPA case where plaintiff alleged only "minimum contacts" and operation of a California website). And mere operation of a website available to Californians does not establish purposeful direction. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (purposeful direction requires "something more than a foreign act with foreseeable effects in the forum state") (cleaned up).

The Complaint also fails on the second prong. Nowhere does Plaintiff allege that her claims arise out of *California-specific* contacts. To the contrary, the Complaint is clear that the Pixel operates regardless of a visitors' location. *See generally* Compl. (referring to "users" and "individuals" untethered to location); *see also Martin v. Outdoor Network LLC*, No. 23-cv-09807, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31, 2024) (no personal jurisdiction for website-based CIPA claim even though defendant was allegedly aware plaintiff was in California).

Finally, the Complaint fails under the third prong, which requires personal jurisdiction consistent with Due Process. "If the defendant merely operates a website,

even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *MGA Ent., Inc. v. Cabo Concepts Ltd.*, No. CV 20-10170, 2021 WL 4733784, at *5 (C.D. Cal. June 7, 2021) (cleaned up); *see also Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) (same) (cleaned up). Plaintiff has not stated a prima facie case for general or specific jurisdiction so her Complaint should be dismissed. *See Heiting*, 2024 WL 3751276 at *4 (dismissing CIPA case for lack of personal jurisdiction).[8]

**C. The Complaint fails to state a claim.**

The Court should dismiss the Complaint pursuant to Rule 12(b)(6) for multiple, individually sufficient reasons: *First*, the Complaint's sole theory of liability is based on the CalPRTT Act, which is not applicable to commercial websites like Gerber's that do not permit person-to-person communications. *Second*, even if there were plausible arguments that the CalPRTT Act might apply to ordinary commercial websites, the Act's scope is at a minimum ambiguous, and the rule of lenity requires dismissal. *Third*, the Complaint fails to plead two essential elements required for a trap-and-trace claim, namely: the presence of a "communication," and the collection of "dialing, addressing, routing, and signaling" information. *Fourth*,

---

[8] For similar reasons, the Complaint lacks sufficient allegations that Gerber or the Website are within the territorial scope of the CalPRTT Act, which lacks force outside of California. Per the Commerce Clause of the U.S. Constitution and to avoid legal conflict with other states, California observes a presumption against the extraterritorial application of its laws. *See, e.g.*, *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history") (cleaned up) (quoting *N. Alaska Salmon Co. v. Pillsbury*, 162 P. 93, 94 (Cal. 1916)). Nothing in the CalPRTT Act evidences an intent that it should apply beyond California's borders. Indeed, because it only permits law enforcement to install and use PRTTs in criminal investigations pursuant to procedures and requirements that are necessarily only available to *California* peace officers, *see* Cal. Penal Code §§ 638.51(a), 638.52, 638.53, extraterritorial application of the Act would produce absurd results: Every federal law enforcement officer or officer from another state would commit a violation of the California Penal Code by installing and using a PRTT that was issued under another authority.

the Complaint does not allege any injury as required to bring a civil suit for a violation of the CalPRTT Act. *Fifth*, even if Plaintiff pled all the elements of a claim, the Act's statutory exemptions would still authorize Gerber to use the Pixel on its own website.

**1. The Act is not applicable to commercial websites like Gerber's**

The Court should dismiss the Complaint because the CalPRTT Act does not apply to ordinary commercial websites like Gerber's that do not provide visitors any means to send or receive person-to-person communications. Like its federal counterpart, the CalPRTT Act was drafted entirely with person-to-person communications in mind. *See, e.g.*, Assemb. Comm. on Pub. Safety, Analysis of Assemb. Bill No. 929 (CA, 2015–2016 Reg. Sess.) at 1011 (PRTTs allow law enforcement to determine "which people" are "communicating with one another and at what times."). The Act's limited focus on person-to-person communications is further evident from its structure and text. *See also*, Section II.A*, supra*.

For example, the Act's requirements for PRTT orders contain multiple references to "subscribers" and "telephone line[s]," underscoring that the Act only applies to person-to-person communication services. *See* Cal. Penal Code § 638.52(1), (3) (order must identify "the person to whom is leased or in whose name is listed the *telephone line*," and the "number" and "physical location of the *telephone line*" to which the device will be attached) (emphases added); *see also id.* § 638.52(5)(g) (order must direct that "the person owning or leasing the line" not notify the "listed subscriber" of the investigation's existence). It would be nonsensical to interpret the Act so broadly that it ensnares people's non-communicative interactions with commercial websites, when the only technology specifically (and repeatedly) mentioned in the Act is *the telephone*, the archetypal person-to-person communications tool that spurred the very invention of PRTTs.

Additionally, by definition, a trap-and-trace device must capture information about a communication that conveys some "content" that is separate from the information the device captures. *See* Cal. Penal Code § 638.50(c) (a trap-and-trace

device captures information that identifies "the source of a wire or electronic communication, but not the *contents* of [that] communication") (emphasis added). And to contain "contents", a communication must convey the "substance, purpo[rt], or meaning" of an "intended message" that is distinct from "record information regarding the characteristics of the message." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017–18 (C.D. Cal. 2023) (cleaned up). When people talk on the phone, send an email, or meet via videoconference, they might exchange greetings, share intimacies, grievances, or gossip, or even just talk about the weather. People use these tools to share an "intended message," however banal it might be. *Id.* The opposite is true when people simply "interact[] with a website" to browse for products like baby food; instead of "having a personal conversation or sending a personal message," website visitors simply "access[] publicly available data." *Vita v. New Eng. Baptist Hosp.*, 243 N.E.3d 1185, 1205 (Mass. 2024) (dismissing pixel-based wiretapping claim because interactions with a commercial website did not entail "person-to-person" communication); *see also, e.g.*, *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) ("simply opening a webpage or mobile application is not a communication with content"); *Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-00281, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024) (dismissing CIPA claim involving a commercial website because plaintiff "fail[ed] to show *communications* between Plaintiff" and the website and did not allege that she "intended to convey a message to [the website]") (emphasis original).

The text of the CalPRTT Act's limited exemptions further confirm that it is limited to person-to-person communications platforms, because these exemptions apply only to "electronic or wire communication service" providers. Cal. Penal Code § 638.51(b)(1)-(5). The Act does not mention any other types of services, much less categories that might encompass simple commercial websites. These terms have stable and fixed meanings under both federal and state law, and courts have applied them consistently for decades. For example, related provisions of California law

define an "electronic communications service" as one that provides subscribers "the ability to send or receive electronic communications." Cal. Penal Code § 1546(e).[9] Courts interpreting the same term under federal law consistently hold that such services can include, e.g., "email provider[s]" because they "permit users to communicate directly with one another.," *Casillas v. Cypress Ins. Co.*, 770 F. App'x 329, 330 (9th Cir. 2019), and "internet service providers" that enable users to engage in "communications over the internet." *In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45, 47 (D. Mass. 2005). But courts consistently hold that ordinary commercial websites do not qualify. *See, e.g.*, *In re U.S. for an Ord. Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 210 (D.D.C. 2018) (unlike "a user-to-user messaging service," a "service that merely allows users to contact or interact with the company electronically" is not an electronic communication service); *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) (online retailer did not provide electronic communication service); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) ("electronic communications service" does "not encompass businesses selling traditional products or services online"). As one court cautioned, the "allegation that sending information to servers qualifies" to make something an electronic communication would expand the definition to "all online services and thus render the term meaningless." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 687 (N.D. Cal. 2021).

It would be illogical for the CalPRTT Act to sweep ordinary commercial websites into its scope while at the same time preventing them from relying on the Act's business exemptions. This would leave numerous Internet businesses at risk of violating the Act for any number of routine commercial purposes like fulfilling

[9] The term "wire communication service" encompasses services that "use[] wire and cable connections to connect calls." *In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns*, 349 F.3d 1132, 1139 (9th Cir. 2003).

customer orders or protecting against malicious traffic. *See, e.g.*, Cal. Penal Code § 638.51(b)(1)-(3). In short, the Act's exemptions, like numerous other provisions, only make sense if the Act is limited in scope to the types of communications services that allow individuals to communicate with one another. And because Gerber provides baby and toddler food, and not any sort of service that enables person-to-person communications, the CalPRTT Act simply does not apply to the Website.

In sum, the Complaint should be dismissed because the CalPRTT Act only applies to person-to-person forms of communication and does not extend to visitor interactions with ordinary commercial websites.

**2. Plaintiff's theory is contrary to the rule of lenity.**

Even if one were to ignore the CalPRTT Act's drafting history and text, the Court should still reject Plaintiff's interpretation under the rule of lenity. When a penal statute is ambiguous, "the rule of lenity requires courts to limit" its reach to the "clear import of [its] text," and to only apply it "to conduct clearly covered." *See United States v. Lanier*, 520 U.S. 259, 266 (1997). This rule applies with equal force "in a criminal or noncriminal context" to ensure consistency. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). When in doubt, the court "must choose the interpretation least likely to impose penalties unintended" by the drafters. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (citation omitted).

Plaintiff appears to argue that website visitors are anonymous by default and the CalPRTT Act protects this anonymity by prohibiting websites from identifying them even if they volunteer personal information like their name or address. *See* Compl. ¶¶ 9, 19, 12 (the Pixel identifies "otherwise anonymous visitor[s] to the Website" without consent). But nothing in the Act indicates that a website visitor must consent before a website can collect their personal information. To the contrary, PRTT laws are "designed to protect telephone users from unauthorized third-party or governmental intrusions," and not "to protect telephone users from one another." *Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis*, 555 N.W.2d 179, 188 (Wis. Ct.

App. 1996). Taken to its logical conclusion, Plaintiff's argument would mean that anyone who uses caller ID to screen calls, or a spam filter to weed out junk mail from their inbox, *commits a crime*. Not only is the Act devoid of anything to indicate that this conduct is "clearly covered," *Lanier*, 520 U.S. at 266, this cannot reasonably be what the California Legislature intended.

Moreover, recent laws that apply to the use of pixels on commercial websites unequivocally do *not* restrict their use. California's Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.* ("CCPA"), established in 2018, comprehensively governs businesses' collection, use, and sharing of "personal information," which includes, among other things, identifiers like name, email address, and IP address, and "Internet or other electronic network activity information," including "information regarding a consumer's interaction with an Internet website." *See id.* § 1798.140(v)(1). Although the Legislature could have followed the example similar laws in other jurisdictions by requiring website operators to obtain visitors' consent before using basic web-tracking technologies like pixels,[10] the Legislature did not do so. Despite extensive input and multiple amendments, the CCPA does not require website operators to obtain visitor's consent to use *any* website data-collection tools (even those that might collect highly sensitive data, such as that related to health, race, and religion). Instead, the CCPA gives consumers the ability to opt *out* of disclosures of their personal information to third parties *after* this information is collected. *See* Cal. Civ. Code § 1798.120 (providing consumers the right to opt out of the selling or sharing of their personal information); *id.* § 1798.135 (establishing acceptable opt-out mechanisms and prohibiting businesses from selling or sharing

[10] Most notably the European Union's ePrivacy Directive, Directive 2002/58/EC of the European Parliament and of the Council of 12 July 2002, requires websites to obtain visitors' opt-in consent before using web-tracking tools like "cookies" or similar devices. *See id.*, Recital 25 ("Users should have the opportunity to refuse to have a cookie or similar device stored" on their equipment," but "[a]ccess to specific website content may still be made conditional on . . . acceptance of a cookie or similar device.").

personal information after a consumer opts out); *id.* § 1798.121 (providing consumers the right to direct businesses to limit their use or disclosure of sensitive personal information).

Indeed, a recent enforcement action involving online-retailer Sephora, confirms that the CCPA squarely governs the use of tools like web pixels. *See* Complaint, *People v. Sephora, USA*, No. CGC-22-601380 (Cal. Super. Aug. 23, 2022). The California Attorney General examined Sephora's use of "third-party companies' tracking software on its website and in its app" to "monitor consumers as they shop," but did not find that Sephora was required to obtain visitors' consent before using this tracking software. *Id.* ¶¶ 1–2. Instead, the Attorney General faulted Sephora for failing to provide visitors with notice and the *ability to opt out* of sharing with third parties, finding that "California's landmark privacy law, the CCPA, sought to prevent this." *Id.* ¶ 2. It would have made little sense for the Legislature to choose an opt-out system for its landmark privacy law had it believed that, by enacting the CalPRTT Act just a few years prior, it already prohibited websites from collecting identifying information about visitors without first obtaining their opt-*in* consent.

Had the California legislature intended to upend Internet commerce by imposing an opt-in regime on the collection of information through tools like web pixels, the Legislature could have clearly said so in either the text of the CalPRTT Act or the CCPA. But it did not, and Plaintiff should not be permitted to rewrite California law to "turn ordinary citizens into criminals." *Nosal*, 676 F.3d at 862–63 (refusing to interpret the Computer Fraud and Abuse Act broadly to "cover violations of corporate computer use restrictions"); *see also In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 512–13 (S.D.N.Y. 2001) (refusing to interpret the federal Wiretap Act such that websites would commit crimes "every time they accessed cookies on users' hard drives"). Because, at a minimum, the CalPRTT Act is ambiguous as to its application to commercial websites and tools like the Pixel, the

Court should apply the rule of lenity to adopt a narrower interpretation consistent with the CCPA and dismiss the Complaint.

**3. The Complaint fails to allege a trap-and-trace claim.**

Even if the CalPRTT Act applied to commercial websites, the Complaint would still require dismissal because Plaintiff does not (and cannot) plead the use of a "pen register," *see* Compl. ¶¶ 28–31, and it does not plead the elements of a claim for an unlawful "trap-and-trace" device. To constitute a trap-and-trace device, a device or process must:

- Capture incoming impulses (electronic or other);
- Such impulses must identify *either* the "originating number" of a communication, *or* "other dialing, routing, addressing, or signaling information" ("DRAS") that is "reasonably likely to identify the source" of that communication; and
- *Not* capture "the contents" of the communication.

Cal. Penal Code § 638.50(c). The Complaint alleges neither a communication nor DRAS.

**i. The Complaint does not allege any communications.**

By definition, a trap-and-trace device must capture the originating number or other DRAS of *a communication*. *See* Cal. Penal Code § 638.50(c). But Plaintiff does not allege any communications here. Instead, the Complaint vaguely describes "electronic impulses," *see, e.g.*, Compl. ¶¶ 11, 17, 18, without explaining what they entail, much less what (or if) they communicate. Because Plaintiff has not identified any communications identified by so-called "impulses," she cannot state a claim for a trap-and-trace device. *See* Cal. Penal Code § 638.50(c).

**ii. The pixel does not capture "dialing, routing, addressing, or signaling" ("DRAS") information.**

The Complaint also does not allege that the Pixel captured any data that could constitute either the "originating number" of a supposed communication, or other

DRAS that is "reasonably likely" to identify the communication's source. DRAS "identif[ies] the source of a wire or electronic communication," but not its contents. *Id.* § 638.50(c). Examples include the number used to make or receive a phone call, or the identifier of an account used to make a social media post. *See, e.g.*, *Meisler v. Chrzanowski*, No. 12-cv-00487, 2013 WL 5375524, at *14 (D. Nev. Sept. 24, 2013) (DRAS "includes the phone numbers dialed from or to a particular telephone," and "its counterpart in internet *communications*") (emphasis added). But DRAS does not include information other than that which identifies the sender of a *communication. In re Certified Question of L.*, 858 F.3d 591, 594 (Foreign Int. Surv. Ct. Rev. 2016) (DRAS includes digits input into a phone to "dial[] a telephone number," but not additional information not used to place the call, e.g., a "password, a personal identification number, [] a bank account number," a "credit card number or a Social Security number").

The Complaint alleges that the Pixel captures visitors' "phone number" and "email," Compl. ¶ 17, and other "information[] such as name, date of birth, and address." *id.* ¶ 12. But it does not explain how any of this information could constitute either the "originating number" or other DRAS of someone's visit to a commercial website. Just because information may identify a *person* does not make it DRAS that is likely to identify the source of the person's communications. A person's phone number constitutes the "originating number" for their *telephone calls*, not their visits to commercial websites. And an email address is DRAS that can identify the source of an *email communication* but, again, not a visit to a commercial website. (People do not browse the web by sending an email.) Name, date of birth, and address fare no better for the same reasons. Finally, the Complaint broadly alludes to other "identifying dialing, routing, addressing and signaling information generated by users," *id.* ¶ 17, but the "threadbare recital[]" of a statutory definition cannot overcome a motion to dismiss. *Iqbal*, 556 U.S. at 663.

**4. Plaintiff has not alleged injury as required by CIPA.**

CIPA's private right of action is available only to individuals who have been "injured" by a violation. Cal. Penal Code § 637.2(a). Although the Complaint asserts that the Pixel "begins to collect information the moment *a user* lands on" the Website, Compl. ¶ 31 (emphasis added), it does not state that Plaintiff was ever such a "user" or even visited the Website. And while the Complaint asserts that the Pixel "is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors," *id.* ¶ 31, and that it captures other information like "name, date of birth, and address," *id.* ¶ 12, it never states that the Pixel collected any such information *from Plaintiff*. Even assuming that Plaintiff visited the Website, the Complaint never describes when or why she would have disclosed her information or how the Pixel might have captured it. Since Plaintiff does not allege so much as a single visit to the Website, let alone some resulting *harm*, she has not alleged an injury sufficient to state a claim.

**5. The Act expressly authorizes Gerber to collect visitor information.**

Even if Plaintiff had alleged the presence of a trap and trace device that injured her (she hasn't), the CalPRTT Act's user-consent exemption precludes her claim. *See* Cal. Penal Code § 638.51(b)(5). This exemption permits the installation of a PRTT device with the consent of the "user," and refers only to a single "user" of a service. *Id.* When construing virtually identical language in other PRTT laws, courts consistently hold that the "user," for purposes of consent to a trap-and-trace device, is the party who *receives* the communication, not the sender. *See, e.g.*, *Wis. Pro. Police Ass'n*, 555 N.W.2d at 188 ("the singular term 'user' must be understood to refer to the consent of the person being called"); *Southern Bell Tel. & Tel. Co. v. Hamm*, 409 S.E.2d 775, 777 (S.C. 1991) (the statute does not refer to "all parties," meaning that "user" must "be understood to refer to the consent of the person being called"); *Ohio Domestic Violence Network v. Pub. Utilities Comm'n*, 638 N.E.2d 1012, 1021 (Ohio 1994) (there will "be only one party with respect to whom the

installation and use [of a trap-and-trace device] is to take place," and this "is thus the 'user' referred to" in the consent exemption) (cleaned up).[11]

Plaintiff may cite to *Moody* to argue that these cases are merely persuasive, *see Moody v. C2 Educ. Sys. Inc.*, No. 24-cv-04249, 2024 WL 3561367, at *3 (C.D. Cal. July 25, 2024), but *Moody* did not consider the chaos that would result from a conflicting interpretation of the CalPRTT Act's consent exemption. As one court noted, it would be "inconceivable" to require "consent [to be] obtained" for "every particular call (which would be impossible for calls that were unanswered)." *Ohio Domestic Violence Network*, 638 N.E.2d at 1021. Requiring consent for each and every incoming communication would render the consent exemption a nullity and make services like caller ID illegal. Logically, there can only be one "user," and here, that "user" is Gerber.

Plaintiff alleges that the Pixel operates on the Website to "identify the source of electronic communications," i.e., supposed communications directed to *Gerber*. Compl. ¶ 17. Plaintiff does not argue that the Pixel operates on visitors' browsers or devices or records their outgoing communications.[12] Gerber is the recipient of the supposed communications, whereas the Website visitor is the sender. Therefore, only Gerber's consent matters. *See, e.g.*, *Wis. Pro. Police Ass'n*, 555 N.W.2d at 188. And

---

[11] These decisions are consistent with guidance from the U.S. Department of Justice pertaining to caller ID services. Per the DOJ, the federal PRTT Act "contemplates that a trap and trace device will be 'attached' to just one telephone line." *See In the Matter of Rules & Pol'ys Regarding Calling No. Identification Serv.- Caller ID*, 9 F.C.C. Rcd. 1764 (1994) (Ex. D, U.S. Dep't of Justice Memorandum, Oct. 28, 1993) (citing 18 U.S.C. §§ 3123(b)(1)(A), (b)(1)(C), (d)(2), 3124(b)). And "[l]ogically, this can only be the line to which the trapped and traced calls are made." *Id.* Accordingly, the consent exemption's reference to the "user" "can only be the person whose incoming calls are trapped and traced, not the many different persons whose calls happen to be tracked when they call a caller ID subscriber." *Id.*

[12] This distinguishes the present case from *Kochava*, the first case to apply the CalPRTT Act to private conduct. 684 F. Supp.3d 1024. *Kochava* considered whether software that was installed on peoples' mobile phones, could constitute a "pen register." *Id.* at 1049-50. Because the software allegedly operated on phones and collected a variety of outgoing data, the court found it plausibly acted as a pen register. *Id.*

because Gerber installed the Pixel, it clearly consented for purposes of the exemption. *See* Cal. Penal Code § 638.51(b)(5).[13]

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Complaint should be dismissed with prejudice.

DATED: November 25, 2024

**PERKINS COIE LLP**

By: /s/ *Donald J. Kula*
Donald J. Kula, Bar No. 144342
DKula@perkinscoie.com
Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Mikella M. Hurley, *pro hac vice forthcoming*
MHurley@perkinscoie.com

Attorneys for Defendant
GERBER PRODUCTS COMPANY

---

[13] Even if the exemption required visitor consent, the Complaint effectively admits there is consent here because the Website displays a "cookie banner" informing visitors of tracking technologies. *See* Compl. ¶ 11. While Plaintiff tries to dance around this damning admission by stating that the Pixel "begins to collect information the moment a user lands on the Website," *id.*, she does not argue that the Pixel captures specific personal identifiers like a visitor's name, email address, or phone number, *id.* ¶¶ 12, 31, before the banner appears. Visitors necessarily supply this information *after* landing, for example, when creating an account. By staying on the Website and volunteering personal information after the banner appears, visitors manifest consent. *See, e.g.*, *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 930 (Cal. 2006) (Consent under CIPA need not be express and can be implied through conduct).

# PROOF OF SERVICE

I, Kathyrn Klemperer, declare:

I am a citizen of the United States and employed in the State of Washington. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1201 Third Avenue, Suite 4900 Seattle, Washington 98101-3099.

On November 25, 2025, I electronically filed via my electronic service address (KKlemperer@perkinscoie.com) the attached document:

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

with the Clerk of the court using the CM/ECF system which will then send a notification of such filing to the following:

| | |
|---|---|
| Robert Tauler<br>TAULER SMITH LLP<br>626 Wilshire Boulevard, Suite 550<br>Los Angeles, CA 90017<br>213-927-9270<br>Email: robert@taulersmith.com | *Attorneys for Plaintiff*<br>Vianca Velasco |
| Matthew J. Smith<br>TAULER SMITH LLP<br>626 Wilshire Boulevard, Suite 550<br>Los Angeles, CA 90017<br>213-927-9270<br>Email: matthew@taulersmith.com | *Attorneys for Plaintiff*<br>Vianca Velasco |
| Narain Kumar<br>TAULER SMITH LLP<br>626 Wilshire Boulevard, Suite 550<br>Los Angeles, CA 90017<br>310-590-3297 | *Attorneys for Plaintiff*<br>Vianca Velasco |

| | |
|---|---|
| Email: nkumar@taulersmith.com | |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on November 25, 2024, at Seattle, Washington.

*/s/ Kathryn Klemperer*
Kathryn Klemperer